[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12210
Non-Argument Calendar

_____

Agency No. A094-210-917


JOSE LUIS CASTELLON BARILLAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 28, 2019)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Jose Luis Castellon Barillas petitions for review of the Board of Immigration

Appeals's ("BIA") final order. The BIA dismissed Castellon Barillas's appeal,

agreeing with the Immigration Judge ("IJ") that Castellon Barillas was barred from receiving special rule cancellation of removal under § 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"). Because we conclude substantial evidence supports the BIA's decision, we deny Castellon Barillas's petition.

## I.

On October 14, 1995, Castellon Barillas, a native and citizen of El Salvador, applied for asylum in the United States. He stated he "was in political party militar" and was mistreated for having been in that group. On March 3, 2009, an immigration officer interviewed Castellon Barillas regarding his application.

Based on information from the application and interview, on March 23, 2009, United States Citizenship and Immigration Services ("USCIS") notified Castellon Barillas that it would deny his application. Prior to entering the country without inspection in June of 1989, Castellon Barillas had served in the Salvadoran military from 1981–1988, during the Salvadoran Civil War. Castellon Barillas said he would, if he returned to El Salvador, be persecuted by guerrillas, the Salvadoran military's opponents during the civil war. USCIS concluded Castellon Barillas had failed to establish a well-founded fear of persecution: neither he nor his family had been harmed or received threats, and he knew of no former Salvadoran soldiers who had been killed by former guerrillas after returning to El Salvador following

2

the war.  In addition, USCIS noted Castellon Barillas may have been barred from receiving asylum as a possible persecutor himself—the "persecutor bar" to asylum relief.  Country condition reports showed that military members in El Paraiso, where Castellon Barillas served, "committed serious human rights abuses" during the relevant time period.

On April 28, 2009, Castellon Barillas was issued a notice to appear for being an alien present in the United States without being admitted or paroled.  Castellon Barillas admitted to that status, and the IJ found him removable as charged in the notice to appear.

About a year later, on April 26, 2010, Castellon Barillas withdrew his asylum application.  On August 13, 2013, he filed an application for cancellation of removal under NACARA.  The government requested time to investigate the persecutor-bar issue, which applies to NACARA as it does to asylum.[1]

Castellon Barillas's NACARA hearing before the IJ was held on January 9, 2017.  Castellon Barillas was the sole testimonial witness.  Castellon Barillas

---

[1] NACARA, Pub. L. No. 105-100, 111 Stat. 2160, 2196–99 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997), provides that certain nationals from Guatemala, El Salvador, and former Soviet bloc countries are eligible to apply for special rule cancellation of removal.  *See* NACARA § 203(f).  But even if a NACARA applicant satisfies the statutory criteria, he may yet be ineligible for cancellation of removal if he falls within one of six mandatory bars.  *See* 8 U.S.C. § 1229b(c).  One of those six bars is the persecutor bar, which provides that an alien is ineligible for special rule cancellation "if the Attorney General decides that the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* §§ 1229b(c)(5), 1231(b)(3)(B)(i).

testified that he was recruited into the military and was assigned to the 4th Brigade infantry unit.

The 4th Brigade had a troubling history. USCIS's Country of Original Information Research Section ("COIRS") prepared a report cataloguing human rights violations of the 4th Brigade between 1982 and 1986. Some of the violations were unique to certain battalions within the 4th Brigade, but others "could have involved any of the units of the 4th Brigade."

Each brigade had an intelligence unit called *Sección* 2 ("S-2"). S-2 units carried out a variety of human-rights abuses, including disappearances, attempted murder, extrajudicial killings, and indiscriminate military attacks (attacks that did not distinguish between armed guerrillas and unarmed citizens). COIRS, quoting the United Nations Commission on the Truth for El Salvador, said S-2 units "operated on the death squad model."

At his NACARA hearing, Castellon Barillas testified that he was a uniformed guard sergeant and that his duties included keeping civilians from coming onto or leaving the base without permission. He further testified that S-2 operatives would bring civilians and suspected guerrillas back to the base. Although Castellon Barillas testified at the hearing that he did not know what S-2 did with the people they brought onto the base, in his asylum interview he had admitted he knew S-2 harmed prisoners. Finally, he also stated in his application

that if he suspected someone was a guerrilla, he would "report it to another group that took care of that." At the hearing, he confirmed that he would hold suspected guerrillas in place before another unit came and collected them.

On June 19, 2017, the IJ issued a written order denying cancellation of removal under NACARA. Specifically, the IJ explained that the record evidence, particularly the COIRS report on the 4th Brigade, indicated the persecutor bar to NACARA relief might apply. Thus, Castellon Barillas bore the burden of proving "by the preponderance of the evidence that he did not persecute or order, assist or otherwise participate in the persecution" of guerrillas based on their political opinion. The IJ found Castellon Barillas's status as a uniformed, armed guard, preventing people from leaving the base, was sufficient under our precedent, *Chen v. United States Attorney General*, 513 F.3d 1255 (11th Cir. 2008), to qualify as a participant in the persecution. The IJ, as factfinder, chose to credit Castellon Barillas's sworn statement in his asylum application that he knew S-2 operatives would hurt people. Therefore, as "a guard of the base where these people were held, [Castellon Barillas] acted in a direct and integral way to ensure those persecuted did not escape from the base." Also significant to the IJ was the fact that Castellon Barillas helped other units pick up suspected guerrillas, even if he did not do so himself.[2]

---

[2] The IJ, noting that this Court has not done so, discussed other circuits that have adopted

5

On April 25, 2018, the BIA agreed with the IJ and dismissed Castellon

Barillas's appeal. It pointed out that where the evidence indicates the persecutor

bar may apply, the applicant bears the burden of proving that he did not engage in

persecution. Under our precedent in *Chen*, an alien may engage in persecution

even where he does not personally harm a victim.[3] Although Castellon Barillas

testified that he did not know what the S-2 unit did, his sworn statement during the

asylum process, credited by the IJ, contradicted that testimony. Castellon Barillas

was also a guard who prevented people from leaving the base, where S-2 was

committing its human-rights violations. In short, the BIA explained:

> It is not [Castellon Barillas's] "mere" membership in a Salvadoran
> military unit that engaged in persecution that allows us to reach this
> conclusion, but instead it is because [he] reported guerrilla members
> and turned them over for interrogations that were persecutory on
> account of political opinion and prevented civilians and other military
> members from leaving the base, even though he knew there was an

a subjective knowledge requirement in persecution-bar cases. Assuming *arguendo* that this Court might adopt such a requirement, the IJ found that Castellon Barillas's knowledge of the persecution and torture by the S-2 unit had been established. We do not reach this alternative basis for the IJ's holding because Castellon Barillas does not contest it on appeal.

[3] The "standard for determining whether an asylum applicant is ineligible for asylum and withholding of removal due to assistance or participation in persecution is a particularized, fact-specific inquiry into whether the applicant's personal conduct was merely indirect, peripheral and inconsequential association or was active, direct and integral to the underlying persecution." *Chen*, 513 F.3d at 1259. Although mere membership in an organization engaged in persecution is not enough, *see Matter of Rodriguez-Majano*, 19 I. & N. Dec. 811, 814–15 (1988), *abrogated on other grounds by Negusie v. Holder*, 555 U.S. 511 (2009), the alien need not have directly assisted in the persecution. *See Chen*, 513 F.3d at 1260. In *Chen*, the alien had a job guarding a facility where women were subjected to forced abortions. 513 F.3d at 1260. We explained: "Those who perform the detention—whether by the use of force, threat of force, or expression of authority meant to dominate and control—are assisting in the underlying persecution." *Id.* Thus, the alien's "conduct as a guard at the family planning facility certainly [rose] to the level of culpability that qualifies as assistance in persecution." *Id.*

"S-2" unit on the base that was known for systematically abusing human rights.

The BIA thus held he did not meet his burden of showing he was not a persecutor.

This timely petition for review followed.

## II.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). Here, the BIA issued its own decision without relying on the reasoning of the IJ. Thus, we will review only the BIA's decision. *See id.*

Castellon Barillas challenges only the way the BIA weighed the facts. We review the BIA's "fact findings under the highly deferential substantial evidence test." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). Under that standard, we will reverse the BIA's factual findings only if the record compels it. *Id.* at 1027.

Here, substantial evidence supports the BIA's conclusion that Castellon Barillas was a persecutor. Castellon Barillas's argument is that it was improper to infer from the facts that he was an active participant in any persecution. But the BIA concluded otherwise, finding that Castellon Barillas "reported guerilla members and turned them over for interrogations that were persecutory on account of political opinion." In addition, he "prevented civilians and other military

7

members from leaving the base, even though he knew there was an 'S-2' unit on the base that was known for systematically abusing human rights."  The BIA applied *Chen*, evaluated the facts, and determined those facts supported the IJ's finding that Castellon Barillas participated in persecution.  Nothing in the record compels us to reverse the BIA's determination.

**PETITION DENIED.**

8